# EXHIBIT B

# Medical Device Accessories – Describing Accessories and Classification Pathways

## Guidance for Industry and Food and Drug Administration Staff

**Document issued on December 20, 2017.**

**Document originally issued on December 30, 2016.**

**This document supersedes Medical Device Accessories – Describing Accessories and Classification Pathway for New Accessory Types, issued January 30, 2017.**

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. The OMB control number for this information collection is 0910-0823 (expires 09-30-2019).

**See additional PRA statement in Section VII of the guidance.**

For questions about this document regarding CDRH-regulated devices, contact the Office of the Center Director at (301) 796-6900 or by email at CDRH-Guidance@fda.hhs.gov.

For questions about this document regarding CBER-regulated devices, contact CBER's Office of Communication, Outreach and Development (OCOD) at 1-800-835-4709 or 240-402-8010 or by email at ocod@fda.hhs.gov.



**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Devices and Radiological Health**
**Center for Biologics Evaluation and Research**

# Preface

## Public Comment

You may submit electronic comments and suggestions at any time for Agency consideration to https://www.regulations.gov. Submit written comments to the Division of Dockets Management, Food and Drug Administration, 5630 Fishers Lane, Room 1061, (HFA-305), Rockville, MD 20852.

Identify all comments with the docket number FDA-2015-D-0025. Comments may not be acted upon by the Agency until the document is next revised or updated.

## Additional Copies

### CDRH

Additional copies are available from the Internet. You may also send an e-mail request to to receive a copy of the guidance. Please use the document number 1770 to identify the guidance you are requesting.

### CBER

Additional copies are available from the Center for Biologics Evaluation and Research (CBER), Office of Communication, Outreach, and Development (OCOD), 10903 New Hampshire Ave., WO71, Room 3128, Silver Spring, MD 20903, or by calling 1-800-835-4709 or 240-402-8010, by email, ocod@fda.hhs.gov, or from the Internet at http://www.fda.gov/BiologicsBloodVaccines/GuidanceComplianceRegulatoryInformation/Guidances/default.htm.

# Table of Contents

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

III.   SCOPE .................................................................................................................. 4

IV.   DEFINITIONS ..................................................................................................... 5

V.    ACCESSORY CLASSIFICATION POLICY ...................................................... 6

   A.   Is the article an accessory? ........................................................................6

   B.   What are the risks of the accessory when used as intended with the parent device(s) and what regulatory controls are necessary to provide a reasonable assurance of its safety and effectiveness? ....................................................................................8

VI.   ACCESSORY CLASSIFICATION PROCESSES..................................................... 8

   A.   Accessory Requests .....................................................................................8

   B.   Classification of New Accessory Types through the De Novo Process.....................11

VII.  PAPERWORK REDUCTION ACT OF 1995......................................................... 12

APPENDIX 1 – REQUEST FOR ACCESSORY DE NOVO CLASSIFICATION ............. 13

# Medical Device Accessories – Describing Accessories and Classification Pathways

## Guidance for Industry and Food and Drug Administration Staff

*This guidance represents the current thinking of the Food and Drug Administration (FDA or Agency) on this topic. It does not establish any rights for any person and is not binding on FDA or the public. You can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations. To discuss an alternative approach, contact the FDA staff or Office responsible for this guidance as listed on the title page.*

## I.    Introduction

The Food and Drug Administration (FDA) developed this document to provide guidance to industry and FDA staff about the regulation of accessories to medical devices. This guidance is intended to describe FDA's policy concerning the classification of accessories and to discuss the application of this policy to devices that are commonly used as accessories to other medical devices. In addition, this guidance explains what devices FDA generally considers an "accessory" and describes the processes under Section 513(f)(6) of the Federal Food, Drug, and Cosmetic Act (FD&C Act) to allow requests for risk- and regulatory control-based classification of accessories.

The FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidances means that something is suggested or recommended, but not required.

Throughout this guidance document, the terms "we," "us" and "our" refer to FDA staff from the Center for Devices and Radiological Health (CDRH) or the Center for Biologics Evaluation and Research (CBER) involved in the review and decision-making aspects of the accessory classification process. "You" and "your" refer to the submitter of an accessory request, De Novo, and/or other related materials.

# II.   Background

FDA has jurisdiction over accessories because the definition of the term "device" provided in Section 201(h) of the FD&C Act defines "device" to include, among other products, an "accessory":

> The term "device" means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is –
>
> > (1) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them;
> > (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
> > (3) intended to affect the structure or any function of the body of man or other animals, and
>
> which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes.

All articles, including accessories, that meet the definition of "device" above are regulated under the FD&C Act.  Accordingly, this guidance describes the types of devices that FDA generally considers as accessories and discusses the risk- and regulatory control-based classification paradigm for these accessories.  This information is expected to provide a greater level of transparency with regards to the classification of accessories and will aid FDA staff and industry in assuring that these devices are subject to the appropriate level of regulatory oversight by FDA.

FDA has traditionally determined the classification of device accessory types in one of two ways:

- *First, by inclusion in the same classification as the parent device, which can be*:

  - *(1) Through operation of 510(k) Premarket Notification clearance.*  In this case, the name of the classification regulation identifies only the parent device. However, FDA, through the 510(k) submission, may find accessories to the parent device to be substantially equivalent to either a predicate parent device with the same intended use and technological characteristics, or different technological characteristics that do not raise different questions of safety and effectiveness, or a predicate accessory that has previously been cleared under the parent device's classification regulation with the same intended use and technological characteristics, or different technological characteristics that do not raise different questions of safety and effectiveness.  These accessories would thus be classified within the same classification as the parent device.  Similarly, when the parent device classification regulation identifies only certain accessories, FDA may determine additional accessories to be classified under the regulation through the

submission of a 510(k) by the sponsor demonstrating substantial equivalence of the parent device with new accessories to the parent device with the predicate accessories.

- o *(2) Through operation of Premarket Application (PMA) approval.* Accessories to an approved Class III device may also be approved in a PMA, in which case they would remain in Class III along with the parent device; or

- o *(3) By express inclusion in the classification regulation[1] or reclassification order[2] for the parent device.* In this case, the title of the classification regulation specifically cites the name of the parent device type and the corresponding accessories. These classification regulations or orders typically place accessories in the same risk- and regulatory control-based classification (e.g., Class I, II, or III) as the parent device but sometimes classify accessories into a different risk- and regulatory control-based classification.

- *Second, by issuance of a unique, separate classification regulation for the accessory.* In this case, FDA has determined that a classification regulation for an accessory should be separate from that of the corresponding parent device. This type of classification has traditionally been considered for accessory types that may be used with multiple parent devices or that have unique standalone functions. In accordance with this second way, FDA may consider issuing a separate classification regulation for a specific category of accessories that has been identified as having a different risk profile from that of the parent device and thus requires a different level of regulatory controls to provide reasonable assurance of safety and effectiveness of the accessories.

On August 18, 2017, section 513(f) of the FD&C Act was amended by the FDA Reauthorization Act of 2017 (Pub. L. 115-52) to state that "the Secretary shall … classify an accessory under [section 513] based on the risks of the accessory when used as intended and the level of regulatory controls necessary to provide a reasonable assurance of safety and effectiveness of the accessory, notwithstanding the classification of any other device with which such accessory is intended to be used." Accordingly, the classification of accessory devices, as for non-accessory devices, should reflect the risks of the device when used as intended and the level of regulatory controls necessary to provide a reasonable assurance of safety and effectiveness. Classifying an accessory in the same class as its parent device is appropriate when the accessory, when used as intended with the parent device, meets the criteria for placement in the class of the parent device. However, some accessories can have a lower risk profile than that of their parent device and, therefore, may warrant being regulated in a lower class. For example, an accessory to a class III parent device may pose lower risk that could be mitigated through general controls or general and special controls and thus could be regulated as class I or class II.

---

[1] *See* section 513(d) of the FD&C Act, 21 U.S.C. 360c(d).
[2] Two reclassification processes are described in sections 513(e) and 513(f)(3) of the FD&C Act, 21 U.S.C. 360c(e) and (f)(3). Prior to the Food and Drug Administration Safety and Innovation Act of 2012 (FDASIA), FDA reclassified devices under section 513(e) of the FD&C Act (21 U.S.C. 360c(e)) through rulemaking; FDASIA changed this to an order process.

# III. Scope

This guidance document describes what FDA generally considers an "accessory" and how the FD&C Act's risk- and regulatory control-based framework for classification applies to accessories to other medical devices. In this guidance, we describe considerations for determining applicable risk to all articles that meet the definition of an accessory. This guidance is only applicable to articles that meet the definition of a device under section 201(h) of the FD&C Act.

In addition, this guidance describes use of the Accessory Classification processes under section 513(f)(6) of the FD&C Act, which provides mechanisms for requesting the appropriate classification (or reclassification) of –

- an accessory that is "included in an application for premarket approval … under section 515 or a report under section 510(k) for clearance of such device [intended to be used with the accessory] and the Secretary has not classified such accessory distinctly from another device,"[3] and
- an accessory "that [has] been granted marketing authorization as part of a submission for another device with which the accessory involved is intended to be used, through an application for such other device under section 515(c), a report under section 510(k), or a request for classification under [513(f)(2)] …"[4]

While other mechanisms exist to request the appropriate classification of an accessory, this guidance focuses on the Accessory Classification process described in section 513(f)(6) of the FD&C Act. For example, for a new accessory type (i.e., an accessory of a type that has not been previously classified under the FD&C Act, cleared for marketing under a 510(k) submission, or approved in a PMA), the De Novo classification process under section 513(f)(2) may be used to obtain classification of such an accessory.[5] In addition, manufacturers of accessories within an accessory type that has already been classified by regulation or order, or has received PMA approval or 510(k) clearance, may seek reclassification[6] or exemption from the requirement to submit a 510(k) notification[7] under applicable sections of the FD&C Act.

FDA intends for the risk- and regulatory control-based classification paradigm discussed in this guidance to apply to all software products that meet the definition of an accessory, including those that may also meet the definition of "Software as a Medical Device (SaMD)."

As part of the FDA's efforts for international convergence, the International Medical Device Regulators Forum (IMDRF) adopted the definition of SaMD as "software intended to be used for

---

[3] *See* section 513(f)(6)(C)(i) of the FD&C Act.
[4] *See* section 513(f)(6)(D) of the FD&C Act.
[5] *See* section 513(f)(6)(E) of the FD&C Act.
[6] *See* sections 513(e) and 513(f)(3) of the FD&C Act.
[7] *See* section 510(m) of the FD&C Act.

one or more medical purposes that perform these purposes without being part of a hardware medical device." [8]

SaMD that meets the definition of a device under the FD&C Act is regulated by FDA. However, SaMD that meets this device definition and uses data from a medical device does not automatically become an accessory for purposes of this guidance. For example, a stand-alone software program that is intended to analyze radiological images or analyzes specific data parameters generated by a device (e.g., blood pressure data or heart rate data) is considered a SaMD but would not be considered to support, supplement, and/or augment the performance of the device that generated data, and therefore, would not be an accessory.

In some cases, software that meets the definition of SaMD may be used in combination (e.g., as a module) with other devices. In these cases, the SaMD may also be considered an accessory if it supports, supplements, and/or augments the performance of one or more parent devices, as described in Section IV below.

Regardless of whether a SaMD uses data from other devices or is used in combination with other devices, the FDA intends to apply the same risk- and regulatory control-based classification paradigm discussed in this guidance to all software products that meet the definition of SaMD and also meet the definition of an accessory.

# IV. Definitions

**Accessory:** A finished device that is intended to support, supplement, and/or augment the performance of one or more parent devices.

**Component (21 CFR 820.3(c)):** "[A]ny raw material, substance, piece, part, software, firmware, labeling, or assembly which is intended to be included as part of the finished, packaged, and labeled device."

**Finished Device (21 CFR 820.3(l)):** "[A]ny device or accessory to any device that is suitable for use or capable of functioning, whether or not it is packaged, labeled, or sterilized." [9]

**Parent Device:** A finished device whose performance is supported, supplemented, and/or augmented by one or more accessories.

---

[8] *See* IMDRF SaMD WG/N10 Final: Software as a Medical Device: Key Definitions (http://www.imdrf.org/docs/imdrf/final/technical/imdrf-tech-131209-samd-key-definitions-140901.pdf)

[9] Note that the preamble to the Quality System Final Rule (61 FR 52609, October 7, 1996) states "To better clarify its intent, FDA has amended the definition to add that all devices that are capable of functioning, including those devices that could be used even though they are not yet in their final form, are 'finished devices.' For example, devices that have been manufactured or assembled, and need only to be sterilized, polished, inspected and tested, or packaged or labeled by a purchaser/manufacturer are clearly not components, but are now in a condition in which they could be used, therefore meeting the definition of 'finished device.'"

# V.    Accessory Classification Policy

The policy governing the classification of accessories is subject to the same risk- and regulatory control-based scheme under the FD&C Act that FDA uses to classify all medical devices.  The risks of an accessory are the risks that it presents when used with the corresponding parent device as intended.  In order to classify an accessory, FDA addresses the following two questions:

1.  Is the article an accessory?
2.  What is the risk of the accessory when used as intended with the parent device(s) and what regulatory controls are necessary to provide a reasonable assurance of its safety and effectiveness?

The answers to these two questions inform the risk- and regulatory control-based classification of a potential accessory pursuant to the criteria at section 513(a)(1) of the FD&C Act.  Individual accessories may either be classified pursuant to the same regulation as a corresponding parent device, when appropriate, or be regulated independently.  The following subsections provide further details and considerations regarding the risk- and regulatory control-based classification for accessories.

## A.    Is the article an accessory?

The accessory classification process begins with the analysis of whether the article under consideration is an accessory as described in this guidance document.  We consider an accessory as an article that:

### 1.  Is intended for use with one or more parent devices.

FDA expects that whether an article is intended for use with a parent device will generally be determined by the labeling and promotional materials for the potential accessory device (rather than by the labeling and promotional materials for the parent device).  If labeling, promotional materials, or other evidence of intended use demonstrates that an article is intended for use with a parent device (either a particular brand or a device type), and it supports, supplements, and/or augments that device, FDA generally considers the article to be an accessory and, thus, a "device" as defined in section 201(h) of the FD&C Act. This includes those articles labeled as being "optional".

It is important to note that FDA does not generally consider articles that do not meet the definition of an accessory as accessories simply because they may be used in conjunction with a device.  For example, FDA would generally not consider a mobile phone that is used as a general platform for applications that include mobile medical applications that are medical devices or an off-the-shelf computer monitor used to display medical data as accessories unless they are specifically intended for use with such medical devices.

## 2. Is intended to support, supplement, and/or augment the performance of one or more parent devices.

A device *supports* the performance of a parent device by enabling or facilitating that device to perform according to its intended use. For example, a tunneling tool for a neurostimulation device that is intended to create a conduit for the leads between the target location to the neurostimulator supports the neurostimulator by facilitating it to provide stimulation to the target neural tissue. In this case, the accessory is necessary to enable the parent device to meet its intended use. An infusion pump stand also supports the intended use of a parent device (an infusion pump) by holding medications or liquids and other infusion accessories firmly, at an appropriate height, and in convenient reach of the patient or caregiver. In this case, the parent device can perform its intended use without the accessory, but the accessory nonetheless supports the performance of the device.

A device *supplements* the performance of a parent device if it adds a new function or a new way of using the parent device, without changing the intended use of the parent device. For example, a pulse oximeter allows a multi-parameter monitor to display oxygen saturation but does not change its intended use, which is to record and display multiple physiological parameters. Similarly, a new balloon catheter used to insert an already approved transcatheter heart valve into a smaller diseased artery supplements the parent device's intended use. The balloon catheter supplements the intended use of the transcatheter heart valve by expanding the population of patients who can receive the parent device to those with smaller diameter arteries, such as women.

A device *augments* the performance of a parent device by enabling the device to perform its intended use more safely or effectively. *Augments* includes improving the performance of a parent device by enabling it to perform more quickly or improving usability or convenience for the device user. For example, a guidewire augments the performance of a bone-cutting instrument by increasing precision of the parent device and reducing the risk to the patient. Similarly, a software program that adds color or contrast filters to enhance raw images generated by an imaging device augments the performance of a parent device by enabling it to perform more effectively.

In practice, the distinctions among devices that support, supplement, or augment parent devices are subtle and many devices that meet the definition of an accessory may do more than one of these things. Thus, if the device is intended to support, supplement, *and/or* augment the performance of one or more parent devices, we intend to consider the device to be an accessory whether it is required or optional..

Some products that are not specifically intended for use, but nevertheless may

be used, with a medical device and which do not meet the definition of an accessory may not warrant independent classification if they are not devices under Section 201(h) of the FD&C Act. As an example, non-device-specific off-the-shelf replacement parts (e.g., batteries, USB cables, computer mouse, etc.) may be used with a medical device, but FDA does not intend to consider these products to be accessories or medical devices.

## B.  What are the risks of the accessory when used as intended with the parent device(s) and what regulatory controls are necessary to provide a reasonable assurance of its safety and effectiveness?

Under the policy described in this guidance, FDA intends to determine the risk of accessories and the regulatory controls necessary to provide a reasonable assurance of their safety and effectiveness according to their intended use in the same manner that is used to determine such for devices that are not accessories. Because accessories are intended to be used with and to support, supplement, and/or augment one or more parent devices, FDA intends to determine the risks of accessories when used, as intended, with the parent device type.

Determining the risks of accessories according to their use with parent devices does not mean that all risks of a parent device are imputed to the accessory; the risk profile of an accessory can differ significantly from that of the parent device, warranting differences in regulatory classification. In determining the classification of an accessory, FDA intends to evaluate the risks imposed by the accessory's impact on the parent device and any unique risks of the accessory independent of its parent device. As with the classification of any other device, the types of regulatory controls necessary to control these risks of the use of the accessory device with the parent device will determine the regulatory class for accessories.

# VI.  Accessory Classification Processes

## A.  Accessory Requests

The appropriate classification or reclassification of a legally-marketed accessory or a new accessory type can be requested under section 513(f)(6) of the FD&C Act through the Accessory Request types described below. Note that FDA intends to track Accessory Requests as Q-Submissions.

For devices regulated by CDRH, Accessory Requests should be submitted to:

> U.S. Food and Drug Administration
> Center for Devices and Radiological Health
> Document Control Center – WO66-G609

10903 New Hampshire Ave
Silver Spring, Maryland 20993-0002

For devices regulated by CBER, Accessory Requests should be submitted to:

U.S. Food and Drug Administration
Center for Biologics Evaluation and Research
Document Control Center
10903 New Hampshire Ave.
WO71-G112
Silver Spring, Maryland 20993-0002

## 1. New Accessory Type

In accordance with section 513(f)(6)(C) of the FD&C Act, you may submit an
Accessory Request for appropriate classification of an accessory that is included
in a PMA, PMA supplement, or 510(k), if the accessory has not been classified
distinctly from another device. This New Accessory Request is appropriate for an
accessory of a type that has not been previously classified under the FD&C Act,
cleared for marketing under a 510(k) submission, or approved in a PMA. This
request should be submitted together with the parent device submission and
include a cover letter that clearly identifies that the submission includes a "New
Accessory Request." The proposed classification of the accessory (i.e., class I or
class II) should also be clearly identified in the cover letter and/or the request. In
addition, the request should provide the necessary information, based on Least
Burdensome principles, to establish the risk profile of the accessory when used as
intended with the parent device as described in section V.B. above. Note that
requests for classification of an accessory in class II must include an initial draft
proposal for special controls, if special controls would be required pursuant to
subsection 513(a)(1)(B) of the FD&C Act.[10]

Since a Pre-Submission is appropriate when FDA's feedback on specific
questions is necessary to guide product development and/or application
preparation, we recommend that you submit a Pre-Submission to request feedback
on a proposed Accessory Request. For more information, see "Requests for
Feedback on Medical Device Submissions: The Pre-Submission Program and
Meetings with Food and Drug Administration Staff - Guidance for Industry and
Food and Drug Administration Staff"
(https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationandGuidance/
GuidanceDocuments/UCM311176.pdf).
FDA must grant or deny the New Accessory Request concurrently with the
decision on the premarket submission with which the request was submitted.[11] If
the New Accessory Request is granted, we will issue you an order establishing a
new classification for such accessory for the specified intended use or uses of

---

[10] *See* section 513(f)(6)(C)(i)(III) of the FD&C Act.
[11] *See* section 513(f)(6)(C)(ii) of the FD&C Act.

such accessory and for any accessory with the same intended use or uses as such accessory. Effective on the date of the granting order, the requester may immediately begin marketing the device subject to the general controls and any identified special controls. If the New Accessory Request is denied but the premarket submission with which it was submitted is cleared or approved, the accessory may be legally marketed but will be considered to be in the same classification as the parent device.

## 2. Existing Accessory Type

In accordance with section 513(f)(6)(D) of the FD&C Act, you may submit an Accessory Request for appropriate classification of an accessory that has been granted marketing authorization as part of a submission for another device with which the accessory involved is intended to be used, through a premarket submission or a De Novo request for such other device (referred to as an "Existing Accessory Type"). The Accessory Request should include a cover letter that clearly identifies that the submission is an "Existing Accessory Request." The proposed classification of the accessory (i.e., class I or class II), as well as the current classification, should also be clearly identified in the cover letter and/or the request. An Existing Accessory Request should include the necessary information, based on Least Burdensome principles, to establish the risk profile of the accessory when used as intended with the identified parent device as described in section V.B. above. Note that requests for classification of an accessory in class II must include an initial draft proposal for special controls, if special controls would be required pursuant to subsection 513(a)(1)(B) of the FD&C Act.[12] Prior to the submission of an Existing Accessory Request, FDA will provide an opportunity for a meeting to discuss the appropriate classification of the accessory, upon request. [13]

Since a Pre-Submission is appropriate when FDA's feedback on specific questions is necessary to guide product development and/or application preparation, we recommend that you submit a Pre-Submission to request feedback on a proposed Accessory Request. For more information, see "Requests for Feedback on Medical Device Submissions: The Pre-Submission Program and Meetings with Food and Drug Administration Staff - Guidance for Industry and Food and Drug Administration Staff" (https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/UCM311176.pdf)

FDA must grant or deny the Accessory Request for an Existing Accessory Type within 85 days of receiving the request.[14] If the request is granted, we will issue you a written order granting the Accessory Request and identifying the classification of the device (either class I or class II). We will then publish a final

---

[12] *See* section 513(f)(6)(D)(ii) of the FD&C Act.
[13] *See* section 513(f)(6)(D)(ii) of the FD&C Act.
[14] *See* section 513(f)(6)(D)(iii) of the FD&C Act.

order in the *Federal Register* providing public notice of the decision, which will result in codification of the device's identification, classification, and applicable requirements in Title 21 of the Code of Federal Regulations (device classifications are at parts 862 – 892). If FDA does not agree with the recommendation for classification submitted in the request, we will provide a written response that includes a detailed description and justification for the denial of the request.

# B. Classification of New Accessory Types through the De Novo Process

In addition to the Accessory Requests under Section 513(f)(6), you can utilize the De Novo classification process in Section 513(f)(2) of the FD&C Act to request risk- and regulatory control-based classifications of new accessory types. In order to be considered a new accessory type, the accessory under consideration should not be classified by an existing classification regulation and should not be the subject of any approved PMAs or cleared 510(k)s for that accessory type. This De Novo classification process provides a pathway to class I or class II classification for accessories with low to moderate risk for which general controls or general and special controls provide a reasonable assurance of safety and effectiveness, but for which there are no legally marketed predicate devices. For additional information regarding the De Novo classification process, please see "De Novo Classification Process (Evaluation of Automatic Class III Designation); Guidance for Industry and Food and Drug Administration Staff" (https://www.fda.gov/ucm/groups/fdagov-public/@fdagov-meddev-gen/documents/document/ucm080197.pdf). Please also refer to Appendix 1 (below) for the information FDA recommends be submitted in a De Novo request for a new accessory type.

FDA must make a classification determination for the device that is the subject of the De Novo request by written order within 120 days of the request.[15] If the submitter demonstrates that the criteria in section 513(a)(1)(A) or (B) of the FD&C Act are met (i.e., accessories for which general controls or general and special controls provide a reasonable assurance of safety and effectiveness), FDA will grant the De Novo request, which classifies the new accessory (and accessory type) in class I or class II. The accessory may then be marketed immediately and serve as a predicate device for future 510(k) premarket notifications, if applicable. FDA will publish a notice in the *Federal Register* announcing the classification and the regulatory controls necessary to provide reasonable assurance of safety and effectiveness of the accessory. If the request to undertake De Novo classification is declined,[16] the accessory remains in class III under

---

[15] *See* section 513(f)(2)(A)(iii) of the FD&C Act.

[16] A request to undertake the De Novo classification could be declined for reasons including if the performance data provided in the De Novo request do not support that general controls or general and special controls can appropriately mitigate identified risks to health for the device to provide a reasonable assurance of safety and effectiveness.

section 513(f)(1) of the FD&C Act and may not be marketed until a PMA is submitted by the sponsor and approved by FDA.

# VII. Paperwork Reduction Act of 1995

This guidance contains information collection provisions that are subject to review by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501-3520).

The time required to complete this information collection is estimated to average 180 hours per response, including the time to review instructions, search existing data sources, gather the data needed, and complete and review the information collection. Send comments regarding this burden estimate to:

Department of Health and Human Services
Food and Drug Administration
Office of Chief Information Officer
Paperwork Reduction Act (PRA) Staff
PRAStaff@fda.hhs.gov

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. The OMB control number for this information collection is 0910-0823 (expires 09-30-2019).

# Appendix 1 – Request for Accessory De Novo Classification

Manufacturers or other interested parties may seek a decision by the FDA on the appropriate risk- and regulatory control-based classification of a new type of accessory by filing a De Novo request (hereafter a "De Novo") under section 513(f)(2) of the FD&C Act.  This process is also known as the De Novo classification process.[17]

In order to streamline the submission and evaluation of the accessory De Novo so that only information necessary to assess accessory safety and effectiveness is submitted and reviewed, we recommend that the following information be provided:

- Clear identification as a De Novo request for a **new** accessory device type;
- Device Information and Summary:
  - A description of the relevant parent device(s);
  - A description of the ability for the accessory to be compatible with a specific parent device, multiple parent devices, or a class of devices;
  - A description of the technical characteristics of the accessory, which ensure compatibility with a specific parent device, multiple parent devices, or a class of devices;
  - A description of how the accessory supports, supplements and/or augments the performance of the parent device.
- Identification of parent product(s) to which the accessory is compatible, including model number, connector type, etc.;
- Classification summary and recommendation:
  - The classification summary should include a rationale for why the accessory device does not fit within any identified classification for the parent device(s);
- An identification of the risks to health presented by the accessory device and proposed mitigation measures;
- Proposed controls:
  - For proposed class II devices, a list of general and special controls that sufficiently mitigate the risks to health, including compatibility of the accessory device with the parent device and a description of how the proposed special controls will provide a reasonable assurance of safety and effectiveness for the accessory device
  - For proposed class I devices, an identification of how the application of general controls only would sufficiently mitigate the risks to health and would provide a reasonable assurance of safety and effectiveness of the accessory device;
- Summary of the performance data supporting the De Novo:
  - Reference to all reasonably known relevant data and information, including new information, about the accessory device and/or the accessory in

---

[17] *See* "De Novo Classification Process (Evaluation of Automatic Class III Designation); Guidance for Industry and Food and Drug Administration Staff" (https://www.fda.gov/ucm/groups/fdagov-public/@fdagov-meddev-gen/documents/document/ucm080197.pdf).

combination with the parent device(s), whether favorable or unfavorable to the proposed classification; and

- Labeling for the accessory with adequate instructions for use with the parent device(s):
  - Include labeling instructions to address compatibility of the new accessory device and the parent device(s), including any relevant performance data to support compatibility; and
  - Include relevant technical characteristics of the accessory.

In preparing a De Novo request for an accessory of a new type, we suggest you review publicly posted information, including decision summary documents, for recently granted CDRH De Novo requests available on our website at http://www.fda.gov/AboutFDA/CentersOffices/OfficeofMedicalProductsandTobacco/CDRH/CDRHTransparency/ucm232269.htm.

In an effort to further streamline and facilitate FDA's review of your accessory De Novo classification request, we recommend that you provide a draft executive summary document with the following information:

- Administrative information,
- Proposed identification language for a new classification regulation or order;
- Summary of the accessory device, including a detailed description of the accessory, including any necessary technical characteristics and compatibility information with the parent device(s);
- Summary of the performance data to support the proposed classification recommendation;
- Risk and Mitigation Information: for class I accessory devices, an explanation of how general controls adequately mitigate any risks to health; for class II accessory devices, listing of the risks and mitigation measures, including the special controls necessary to mitigate the risks to health; and
- Benefit/Risk Considerations.[18]

---

[18] For information on benefit-risk determinations and factors considered, please see FDA guidance titled "Guidance for Industry and Food and Drug Administration Staff - Factors to Consider When Making Benefit-Risk Determinations in Medical Device Premarket Approval and De Novo Classifications," available at https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/UCM517504.pdf.